# HERVEY H. SEDBERRY v. WILLIAM GWYNN.

Division One, June 2, 1920.

1. **RECEIVER: Appointment: Matters Considered.** On an appeal
from an order refusing to set aside the appointment of a receiver,
whether the prior judgment in the suit to restrain defendant
from selling to any other than plaintiff certain vulcanizers, and
for an accounting, be considered final or interlocutory, it and the
pleadings are competent upon the issues involved; but the facts
which superinduced such judgment are not for review.

2. **APPEAL: No Formal Assignments: Points: Receiver.** Although
there is no formal assignment of errors, if under the heading of
"Points and Authorities" there are specific charges that the court
erred in the appointment of the receiver, and that is the only
assignment that could properly be made, the appeal will not be
dismissed for failure to comply with the rules.

3. **RECEIVER: In Aid of Injunction: Illegal Appointment.** Where
plaintiff sought and obtained (1st) the specific performance of
an alleged contract between him and defendant for the sale of
patented vulcanizers, (2nd) injunctive relief and (3rd) an order
for an accounting, the accounting to be had before a referee, and
no where in the pleadings are the business and property of the

defendant sought to be placed in the hands of the court, but the pleadings and judgment show that defendant had a business of his own, separate and distinct from that of plaintiff, the court has no power, upon plaintiff's subsequent motion, to appoint a receiver to take charge of the assets and operate the business of defendant, for the manufacture and sale of said vulcanizers. Such appointment cannot be made (1st) because the statutes furnish ample powers for the enforcement of the court's judgment restraining sales to others and requiring an accounting, and (2nd) because the property ordered to be turned over to the receiver is not involved in the litigation.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer,* Judge.

REVERSED (*with directions.*)

*J. D. Johnson* for appellant.

(1) The contract in suit was violative of Secs. 10398, 10299, 10301, R. S. 1909, and amendments thereto; therefore, no suit could be legally maintained thereon. Sprague v. Rooney, 104 Mo. 349; Haggerty v. Storage Co., 143 Mo. 238; Kitchen v. Greenbaum, 61 Mo. 110; Downing v. Ringer, 7 Mo. 586. The interlocutory decree adjudging specific performance of said contract was likewise violative of said sections of the statutes; therefore, the lower court erred in making said order appointing a receiver and in overruling appellant's motion to revoke the same. See: Pope-Turnbow v. Bedford, 147 Mo. App. 697; State ex inf. v. Lumber Co., 260 Mo. 212; Bank v. Glass Co., 243 Mo. 411; State ex inf. v. Standard Oil Co., 218 Mo. 382; Finck v. Granite Co., 187 Mo. 244; State ex inf. v. Armour, 173 Mo. 382; State ex inf. v. Insurance Co., 152 Mo. 42; State ex rel. v. People's Ice Co., 246 Mo. 221. The fact that said contract and decree dealt in part with a patented article does not in any way alter or avoid the operation and effect of said sections of the Missouri statutes. See: Boston Store Co. v. American Graph. Co., 246 U. S. 8, 62 Law Ed 551. (2) The lower court had no power to appoint

a receiver, as it did in this instance, for the purpose of executing the interlocutory decree for specific performance of the contract in suit. Price v. Bankers' Trust Co., 178 S. W. Rep. 749; Blades v. Mercantile Co., 154 Mo. App. 353; 37 Cyc. 23; R. S. 1909, secs. 3881 and 2122. (3) The lower court had no jurisdiction over appellant's property and business empowering it to legally appoint a receiver to take possession and operate the same as provided in said order. Miller v. Perkins, 154 Mo. 638; State v. Ross, 122 Mo. 461; Price v. Bankers' Trust Co., 178 S. W. 749. (4) In view of the fact that plaintiff under the provisions of said contract has the right to at any time terminate said contract as well as said decree, the lower court had no jurisdiction in equity to decree specific performance of the contract, nor to make said order appointing a receiver. Marble v. Ripley, 71 U. S. 339; Taussig v. Corbin, 142 Fed. 666; Pullman Car Co. v. Railroad Co., 11 Fed. 625; Staunton v. Singleton, 47 L. R. A. 334; Federal Oil Co. v. Oil Co., 112 Fed. 376; Federal Oil Co. v. Western Oil Co., 121 Fed. 674; Sturgis v. Galindo, 59 Cal. 28; Fry on Spec. Performance, sec. 460, 461, 468. (5) Plaintiff had a complete and adequate remedy at law for the recovery of damages occasioned to him by the alleged breach of the contract in suit. Wilt v. Hammond, 178 Mo. App. 418; Young v. Tilley, 190 S. W. 95. Therefore, the lower court had no jurisdiction in equity to decree the specific performance of said contract, nor to make the order appointing a receiver. Kocurek v. Matychowiak, 185 S. W. 740; Houtz v. Hellmay, 228 Mo. 671; Marble Co. v. Ripley, 77 U. S. 339; 6 Pom. Eq. Jur. 748; 36 Cyc. 554, 556. (6) Neither the petition in the main case, nor plaintiff's petition or application on which said order appointing a receiver was made, states facts sufficient to authorize the making of said order. The order was therefore invalid. Pullis v. Pullis, 157 Mo. 565; Cantwell v. Lead Co., 199 Mo. 42. (7) Said order appointing a receiver is contrary to and violative of Sec. 30, Art. II, Mo. Constitution,

in that, if enforced, it would deprive appellant of his property and of liberty to conduct his business without the unlawful interference of others. Jones v. Yore, 142 Mo. 44.

*D'Arcy & Neun* and *Rippey & Kingsland* for respondent.

(1) The only question involved on this appeal is as to whether the order appointing the receiver was providently granted under the facts set out in the application of plaintiff for appointment of a receiver. Abramskey v. Abramskey, 261 Mo. 117; Love v. Love, 145 Ill App. 150; Naylor v. Sidener, 106 Ind. 179; Iron Hill v. Baker, 33 N. E. 1131. (2) The court had jurisdiction to appoint a receiver, both under the statutes, Secs. 2018, 2122, R. S. 1909, and also on general equitable principles. 1 Clark on Receivers, secs. 191, 192 and cases infra. (3) The case is one of equitable cognizance and the court had jurisdiction to decree specific performance and, as an incident thereto, to grant an accounting and to appoint a receiver. (a) Because the case is within the class involving peculiar subject-matter such as lands, articles covered by patents and copyrights, or other monopolized articles obtainable only from single source. Adams v. Messinger, 147 Mass. 185; Hapgood v. Rosenstock, 23 Fed. 86; Binney v. Annan, 107 Mass. 94; Paris v. Haley, 61 Mo. 453; Secret Service Co. v. Gill, 125 Mo. 140; 36 Cyc. 554; Baumhoff v. Railroad, 205 Mo. 262; St. Davids Parish v. Woods, 24 Ore. 396; 36 Cyc. p. 552, note 68; p. 558, note 27; p. 565, notes 49 and 50; p. 567, note 58; p. 559, note 34. (b) Because an injunction was necessary to enforce the negative covenants of the contract, preventing appellant from selling to other parties, which feature of the case, without more, of itself gives equitable jurisdiction. Pope-Turnbow v. Bedford, 147 Mo. App. 699; Schlitz Brew. Assn. v. Neilsen, 8 L. R. A. (N. S.) 494; Dickerson v. Canal Co., 15 Beav. 260; Huline v. Shreve,

4 N. J. Eq. 116; 3 Pomeroy, Eq. Jur. sec. 1342; 2 High, Injunctions, sec. 1142. (c) Because the contract in suit created a confidential relation or trust between appellant and respondent, whereby the appellant became a trustee for the respondent to turn over to him all orders that might be received direct by the appellant. 39 Cyc. 182, note 66; 34 Cyc. 60, note 11; 1 Clark on Injunctions, secs. 127, 195; Pierce v. Finerty, 76 N. H. 48.

GRAVES, J.,—This is an appeal from an order of the Circuit Court of the City of St. Louis, refusing to vacate a previous order appointing a receiver to take charge of defendant's business. The pertinent facts are few. March 15, 1918, the plaintiff filed a petition in said circuit court, in which he prayed:

"Wherefore, plaintiff prays judgment that defendant may be decreed to deliver to plaintiff all apparatus, appliances and parts that may be ordered by plaintiff under said contract, and to otherwise fully comply with and carry out the terms of said contract; that the defendant be enjoined from selling any of said apparatus, appliances or parts thereof to any person or persons other than plaintiff or from disposing of said inventions and patents to any third party, or from otherwise placing it beyond his power to comply with his contract with plaintiff; that defendant be enjoined from enticing away or interfering with or employing plaintiff's salesman or in any other way interfering with or injuring plaintiff's business; that defendant be ordered to account to plaintiff, as provided in said contract, for all sums to which plaintiff is entitled on sales of said goods made by defendant as above set forth and for all other sums of money which may be due to plaintiff under said contract and for all moneys due to plaintiff which defendant has collected; that plaintiff may recover his costs herein, and for such other and further relief as to this Honorable Court may seem proper."

By the petition it was charged that the defendant was the owner of certain letters-patent from the U. S. Government to use and vend certain vulcanizers, known as the "Gwynn-Bacon Vulcanizers;" that plaintiff had a written contract as to the sale of· the same with defendant, who was manufacturing them; that defendant had declared that said contract was void, and was threatening to sell his business, including his patent, to another, so that plaintiff could not get from him the vulcanizers to carry on his (plaintiff's) business in the sale thereof; that prior to defendant's cancellation or ignoring of such contract, plaintiff had orders for goods which could not be filled by him, but were being filled by defendant with plaintiff's customers: that the conduct of defendant was destroying plaintiff's business, which was dependent upon his contract with defendant.

The answer admitted that defendant was doing business under the name of "Gwynn-Bacon Vulcanizer Company," which was accompanied by specific denials of many things charged in ·the petition. The answer admitted the execution of the contract pleaded by plaintiff, but averred that certain provisions therein rendered said contract void, as one in restraint of trade.

Motion was made to strike out portions of the answer, which was sustained, which is duly preserved in a term bill of exceptions. Reply was a general denial. Such is a very general outline of the case made by the pleadings.

On May 19, 1919, a trial of the issues under the pleadings was had, and the court entered the following decree:

"Now on this day come the plaintiff and the defendant, and this cause being called for hearing upon the issues raised under the pleadings herein as to the right of plaintiff to an injunction against, and an accounting by, defendant, and the evidence of both plaintiff and defendant upon said issues having been introduced and heard by the court, and arguments and briefs of counsel for plaintiff and defendant, upon said issues, having

been heard and considered by the court, and said issues having been fully submitted to the court for adjudication, the court thereupon finds said issues in favor of the plaintiff and against the defendant.

"The court further finds the facts to be as follows:

"1.   That plaintiff and defendant are residents and citizens of the City of St. Louis, State of Missouri, and that defendant William Gwynn has been since on and before the filing of the petition herein, doing business in said city and state under the name and style of Gwynn-Bacon Vulcanizer Company.

"2.   That at all times mentioned in the second amended petition herein said defendant was and is the owner of a   certain invention relative to pressure-closed electric switches, covered by letters-patent of the United States No. 1015225, dated January 16, 1912, by virtue of which defendant enjoys the exclusive right to make, use and vend appliances or apparatus embodying said invention; that said invention was and is an essential feature of commercial appliances known as 'Gwynn-Bacon Vulcanizers,' and that said vulcanizers cannot be made, used or sold without the license or consent of said defendant and cannot be procured upon the open market, by reason of the monopoly enjoyed by the defendent by virtue of the ownership by defendant of said invention and letters-patent.

"3.   That on November 1, 1916, the defendant being the owner of the exclusive right to make, use and vend vulcanizers of the type referred to, as aforesaid, entered into a contract in writing with plaintiff, for a good and sufficient consideration, which contract was and is a lawful, valid and subsisting contract as to all the terms and conditions thereof between plaintiff and defendant.   A copy of said contract is annexed to the original petition herein and marked 'Exhibit A,' and is hereby referred to and made a part of this decree. That in and by said contract defendant agrees, among other things, to sell to plaintiff, at the prices and on the terms specified in said contract, a sufficient number and a-

mount of said vulcanizers, repair parts, and appliances therefor, mentioned in said contract, to fill all orders therefor sent by plaintiff to defendant.

"4. That said contract further provides that upon receipt. of an order for any of the goods covered by said contract, the defendant would promptly execute the same by supplying the required goods, either direct to the purchaser, or to plaintiff, as the latter might direct; that said goods should be boxed in first class condition by the defendant and should be free from defects, thoroughly tested before leaving the factory, and should be guaranteed (in the case of vulcanizers) by the defendant for one year from date of purchase; that all goods should be delivered by the defendant to the transportation company in St. Louis at the expense of the defendant; also that the plaintiff in billing said goods to the consumer might bill under his own name or under the name of any partnership or corporation he might organize, and that he shall have the exclusive right to use, in connection with said billing, the name Gwynn-Bacon Vulcanizer, or of any of the other Gwynn-Bacon products covered by said agreement; also that the defendent should promptly forward to the plaintiff an invoice of all goods shipped, whether shipped to the plaintiff direct, or to the consumer direct.

"5. That said contract further provides that all goods shipped by the defendant, either to the customer or to the plaintiff, during any one calender month, are to be paid for by the plaintiff on the 20th of the succeeding month. That failure of the plaintiff to pay the defendant for any goods within fifteen days after the 20th of the month following date of shipment, should entitle the defendant to cancel said contract; provided, that the defendant should give plaintiff written notice of said cancellation and the cause thereof within seven days after the expiration of said fifteen-day period.

"6. That said contract further provides that the defendant shall not during the life of said contract sell or allow any third party to sell, any of the goods cover-

ed by said contract to any party or parties other than the plaintiff; and stipulates that it is the intention of said agreement that all sales to customers of the goods of the defendant are to be made by the plaintiff, whether the orders for said goods are secured by the plaintiff himself, or through agents, or by advertising, or whether said orders come to the defendant, either through his efforts or the efforts of others, or come through the mails or otherwise without solicitation, and that defendant shall promptly transmit to the plaintiff all orders for said goods which may come to him during the life of said agreement for such action thereon as the plaintiff may elect to take.

"7. That said contract further provides that the plaintiff shall purchase from the defendant at the prices and on the terms specified in said contract, during each year of the life of said contract, at least a minimum quanity of said goods sufficient to make up a total of $5,000 of gross sales of said goods to the customers of plaintiff during such year at the prices named in said contract.

"8. That said contract further provides that the same should continue in force for one year from its said date, and that if during the first year of said contract the amount of gross sales made by plaintiff should be not less than ten thousand dollars, then said contract should be continued during each of the next succeeding four years; provided that during each of said four years the gross amount of sales made by the plaintiff to customers should not be less than as follows:

"Gross sales, second year. ............ $15,000
Gross sales, third year. ............... 20,000
Gross sales, fourth year. ............. 30,000
Gross sales, fifth year. ............... 40,000

"That said contract further provides that after the expiration of five years from its said date, it shall continue to remain in force from year to year so long as the gross sales by plaintiff to customers during each year shall be not less than forty thousand dollars.

"9.  That said contract further provides that either party shall have the right, at any reasonable time, to inspect and copy the books,' papers and records of the other, whenever such inspection is reasonably necessary or proper to effectuate the objects of said contract.

"10  That said contract further provides that it shall be binding upon the heirs, representatives and assigns of both plaintiff and defendant.

"11.  That immediately upon the making of said contract both plaintiff and defendant entered upon the performance thereof, and have so continued until on or about the 11th day of March, 1918, as hereinafter stated.

"12.  That plaintiff invested considerable sums of his own money in the development of said business and has advertised said apparatus, and has established a valuable custom and good will for said goods.

"13.  That the gross sales made by plaintiff of goods covered by said contract, during the first year of the life thereof, amounted to over forty thousand dollars; that plaintiff has in that and in all other respects fully complied with all the terms, conditions and agreements in said contract contained and by him to be performed; and still stands ready and willing to comply with and to carry out the terms of said contract.

"14.  That on or about the 11th day of March, 1918, plaintiff received from defendant a notice in writing whereby defendant wrongfully and unlawfully and without just cause or excuse notified plaintiff that he, the defendant, refused to comply further with the terms of said contract and that he considered said contract terminated.

"15.  That defendant did wrongfully and unlawfully and without just cause or excuse, refuse, on said 11th day of March, 1918, and still refuses to deliver to plaintiff the apparatus and appliances which defendant contracted to deliver under said contract, and refused and still refuses to comply with or in any manner to be bound by the terms of said contract although defendant is fully able to perform and carry out said contract.

"16. That defendant prior to and since refusing so to deliver the apparatus called for by said contract, to plaintiff, in violation of said contract, has secretly employed plaintiff's salesmen and has been and is now, in violation of said contract, selling appliances covered by said contract direct to plaintiff's customers and others, without transmitting said orders to plaintiff or accounting to plaintiff therefor, thereby securing for himself and for his own profit the result and fruits of plaintiff's expenditure of money and labor, which plaintiff was induced to expend by reason of said contract with defendant; that defendant is appropriating to himself and destroying plaintiff's business. That defendant has collected large sums of money on sales made by him of said articles to the customers direct, to which sums plaintiff is entitled, and that defendant now has on hand a large number of unfilled orders for said articles, for all of which defendant has failed and refused and still fails and refuses to account to plaintiff, but on the contrary has notified plaintiff as aforesaid that defendant will no longer be bound by the terms of said contract.

"17. That plaintiff is wholly unable to obtain any of the apparatus, appliances, or parts covered by said contract from any other source, except from defendant, by reason of the exclusive monopoly enjoyed by the defendant to make, use or vend said apparatus, appliances and parts.

"18. That by reason of plaintiff's inability to obtain said apparatus or appliances from said defendant and by reason of the other unlawful and wrongful acts of defendant as above set out, plaintiff has suffered great and irreparable damages and injury and will continue to suffer great and irreparable injury and damage, but the exact amount of which it is impossible to state until an accounting is had between plaintiff and defendant; that plaintiff has no adequate remedy at law; that the ascertainment of said damage to plaintiff requires a complicated accounting.

"Wherefore, it is ordered, adjudged and decreed by the Court, as follows:

"19. That the plaintiff herein be and he is hereby granted the relief prayed for in his second amended petition herein; and,

"20. That the defendant herein, be and is enjoined and ordered to sell and deliver to plaintiff and to all parties claiming by, through, or under him, in accordance with the terms of said contract of November 1, 1916, all apparatus, appliances and parts which he is called upon to sell and deliver to plaintiff under the terms of said contract, and to forthwith fully and completely comply with and carry out all the other terms and conditions of said contract; and,

"21. That the defendant herein, his agents, servants or anyone acting through or under him, either directly or indirectly, be and they are hereby enjoined and prohibited from selling any apparatus, appliances or parts covered by said contract, or any of defendant's rights in the inventions and patent, covering said apparatus, appliances or parts, to any person or persons other than plaintiff, and from doing any act or acts placing it beyond defendant's power to comply with the said contract; and from in any way interfering with, or injuring plaintiff's business carried on in accordance with the terms of said contract; and,

"22. That this cause be referred to Geo. F. Haid, Esq., as referee, for an accounting between plaintiff and defendant, and to hear, determine, and report his findings upon all issues of law and fact connected with said accounting, including in his report a statement of all sales made by defendant, subsequent to March 10, 1918, of any of the apparatus, appliances or parts covered or contemplated by said contract of November 1, 1916, and of all transactions and business of the defendant subsequent to March 10, 1918, relating to or connected with any of said apparatus, appliances or parts covered by said contract, and showing also all amounts to which

plaintiff may be entitled by reason of the violation by defendant of plaintiff's rights under said contract.

"The court retains jurisdiction of this cause pending final judgment herein to be entered subsequent to the filing of the referee's report."

Thereafter, on June 26, 1917, the plaintiff filed his motion for the appointment of a receiver for defendant's business, and on June 28th following, the same was sustained by the following order:

"Now at this date, the above named cause coming on for hearing on the application of the plaintiff, duly verified for an order for the appointment of a receiver herein, come the above named parties, plaintiff and defendant, by their attorneys of record and the evidence of plaintiff and defendant having been introduced, and the arguments of counsel heard by the court, and the court being fully advised in the premises, does find that the facts stated in said application of plaintiff for the appointment of a receiver are true.

"Wherefore, it is by the court ordered, adjudged and decreed that said application of plaintiff for an appointment of a receiver be and is hereby sustained, and the court appoints Edward E. Rudolph of the City of St. Louis, as receiver in the above entitled cause, to take charge of the assets, and to operate the business of the defendant, for the manufacture, sale and disposal of the vulcanizers, repair parts, and materials, covered and contemplated by the contract of November 1, 1916, between plaintiff and defendant, and to carry out and perform the decree of the court entered in this cause on May 19, 1919, and subject to such further orders as the court may hereinafter enter in this cause. Said receiver shall take charge immediately upon filing bond approved by the court in the sum of five thousand dollars."

June 30th defendant filed his motion to vacate such order appointing a receiver, which motion was overruled by the trial court, and it is this order overruling the motion to vacate the order appointing a receiver, which

is now here for review. The cause was advanced as required by statute, and hence this early hearing thereof. Further details may well be left to the opinion.

I. We have a peculiar situation in this case. It will be noted that the judgment upon the merits of the case is not here. The only thing here is the legal propriety of the appointment of a receiver for defendant's business. The pleadings and judgment (whether such judgment be either final or merely interlocutory) may be and we think are competent upon the issues here involved, but the facts which superinduced such judgment, under such pleadings, are not here for review. It will be time enough to consider them when the case upon the merits reaches us. We have set out the findings of facts in the case upon the merits, but with the sole view of enabling us to determine the question of the propriety of the court in the appointment of the receiver, and for the further reason that such findings of facts are incorporated in and made a part of the interlocutory decree herein. We say interlocutory decree, because the court has appointed a referee, with full power to hear and report upon certain matters before final judgment could be entered. But to our mind it is really immaterial whether the judgment entered (quoted supra) be called an interlocutory or a final judgment. The sole purpose of it, and of the pleadings in this case, is to enable us to properly pass upon the·propriety (legal) of a receivership in this case.

*Matters Considered.*

The foregoing is suggested, because it is urged that the appeal should be dismissed, because the appellant has failed to comply with our rule as to assigments of error. In this case there could be but one assignment of error, and that is, that the court erred in refusing to sustain the appellant's motion to set aside its order appointing a receiver for appellant's business. There is no formal assignment of error contained in appellant's brief. It goes from a statement of the case to "Points and Authorities" and then un-

*Assignments.*

der head of "Brief of the Argument" is the printed argument. In other words the brief contains (1) statement of case, (2) Points and Authorities, and (3) Arguments. But under the head of "Points and Authorities" we have these two (with others) specific statements:

"2. The lower court had no power to appoint a receiver, as it did in this instance, for the purpose of executing the interlocutory decree for specific performance of the contract in suit See: . . .

"3. The lower court had no jurisdiction over appellant's property and business empowering it to legally appoint a receiver to take possession and operate the same as provided in said order, See: . . ."

Under each of the above are cited cases to which we are referred. Whilst it is better for counsel to make formal assigments of error, we have continuously ruled that, where the "Points and Authorities," as here, charged specific error to the trial court, such would be considered as a compliance with our rule. With this ruling (and our cases are numerous and well known) we are satisfied. This contention of respondent is therefore overruled. [Collier v. Lead Co., 208 Mo. 1. c. 258-9; Wallace v. Libby, 231 Mo. 1. c. 344; Mugan v. Wheeler, 241 Mo. 1. c. 379.] These cases cover both divisions of this court. Of late our brothers in Division Two have been a little more rigid in the enforcement of Rule 15. [Vahldick v. Vahldick, 264 Mo. 530; Frick v. Ins. Co., 213 S. W. 854.] But neither of those cases, in our judgment, go to the extent respondents would have us go in this case. When in this case the record shows that the court did appoint a receiver, and the brief charges (as here) that the court was without power to appoint such, the assignment of error is sufficient. Our rules should be, and, in most instances, have been, liberally construed.

II. As suggested above we can and do consider the pleadings and judgment upon the merits in determining the legal propriety of the appointment of this receiver. The plaintiff sought, and obtained, (1) specific per-

formance of his allegged contract, (2) injunctive relief, and (3) and order for an accounting as between the parties—the accounting to be had before a referee of the court. No where in these pleadings is the business of the defendant placed or sought to be plaed in the hands of the court, *custodia legis* The facts pleaded, and the facts found, show that defendant had a business of his own, separate and distinct from that of the plaintiff. Defendant was manufacturing a patented article, and plaintiff, under contract, was selling such article for defendant. Plaintiff's contract gave him no control of defendant's business and property. Nor has the judgment so found or decreed. Defendant's business (as a business enterprise) was not before the court, nor in the charge of the court. Nor can it be said that plaintiff's business (as a business enterprise) was before the court, or in the hands of the court. The questions before the court were the three which we have set out above. If the plaintiff has a valid subsisting judgment, either (1) for the specific performance of a contract, or (2) for the stated injunctive relief, he has ample legal remedy for the enforcement of the same under our statutes. [*Vide,* Secs. 2122 and 3881, R. S. 1909.] If he should get specific judgment for money upon the incoming of the referee's report, an execution would get full results, absent, as here, any charge of fraud or of insolvency.

*Receiver.*

This case has a state of facts all its own. Defendant, so far as the record goes, has a thoroughly solvent business, all his own. Personally he may have made a contract which ought to be enforced. And personally he may have threatened things which should have been enjoined. Of these matters our cognizance is limited, in the determination of the one question before us.

The alleged contract (ordered enforced) does not go to defendant's business, as a going, solvent business concern, but it only goes to a contract as to the filling of certain orders out of the manufactured stock of this business. The business enterprise of the defendant has

never been seized by the strong arm of the law, and placed before the court, save and except as it might be through this receiver. Up to the date of this judgment the business and property of the defendant was not before the court. The defendant was before the court, and its judgment is against defendant, and not against his property. Even the specific performance part of the judgment is personal in character, and does not reach the whole business of defendant, which the receiver is directed to take charge of by the order before us. The powers of a court of equity are very broad as to property involved in the litigation, and a receiver therefor may be appointed for divers reasons, but the rule is just as clear that there should be no receiver appointed for property which is not in litigation and thereby before the court. [23 R. C. L. p. 13.]

The manufacturing business of this defendant (as a business and as his property) was not involved in the suit out of which this receivership grows. So that for the two reasons, (1) the statutes furnish ample powers for the enforcement of the court's judgment and (2) the property turned over to the receiver by the order was not involved in the litigation, the court erred in not vacating, upon defendant's motion, the order appointing the receiver.

We shall not discuss the merits of the case, even as they appear before us on the pleadings and judgment. The instant judgment or order should be and is reversed with directions to the circuit court to vacate its order appointing the receiver. The merits of the case will no doubt reach us in due time. All concur, except *Woodson, J.*, absent.